UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

|  |  |  |
|---|---|---|
| EASTERN MAINE MEDICAL CENTER, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | 2:21-cv-00320-JDL |
| TEVA PHARMACEUTICALS USA INC., et al., | ) ) ) ) | |
| Defendants. | ) | |

**ORDER ON EMERGENCY MOTION TO REMAND AND MOTION TO STAY**

On September 10, 2021, nine nonprofit corporations that operate hospitals in Maine—Eastern Maine Medical Center, Aroostook Medical Center, Blue Hill Memorial Hospital, Charles A. Dean Memorial Hospital, Inland Hospital, Maine Coast Regional Health Facilities, Mercy Hospital; MRH Corp., and Sebasticook Valley Health (together, "Plaintiffs")— filed a lawsuit in the Maine Superior Court (ECF No. 1-1) against several defendants that are alleged to have unlawfully marketed, distributed, and dispensed prescription opioids. Plaintiffs assert six state-law causes of action and primarily seek to recover what they have paid and will pay to provide opioid-related care.

On November 12, 2021, four of the defendants—Walmart Inc.; Wal-Mart Stores East, LP; Walgreen Co.; and Walgreen Eastern Co. (together, "Defendants")— removed the case to federal court (ECF No. 1), claiming federal question jurisdiction. *See* 28 U.S.C.A. § 1331 (West 2022). The Plaintiffs filed an Emergency Motion to Remand (ECF No. 13) on November 19, 2021.

On November 23, 2021, the Judicial Panel on Multidistrict Litigation ("JPML") entered a conditional transfer order that identified this case as involving questions of fact common to 2,207 actions that the JPML had previously transferred to the U.S. District Court for the Northern District of Ohio for coordinated or consolidated proceedings pursuant to 28 U.S.C. § 1407. Conditional Transfer Order (CTO-210) at 1, *In re Nat'l Prescription Opiate Litig.*, MDL No. 2804 (J.P.M.L. Nov. 23, 2021), ECF No. 9416. The JPML stayed the transmittal of its order to give the parties time to oppose the transfer, *id.*, which the Plaintiffs subsequently did, Pls.' Notice of Opp'n to Conditional Transfer Order (CTO-210), MDL No. 2804 (J.P.M.L. Nov. 29, 2021), ECF No. 9420. On November 24, 2021, the Defendants filed a Motion to Stay (ECF No. 22) this proceeding until the JPML decides whether to transfer this case. The JMPL is scheduled to consider the transfer issue at a hearing session on January 27, 2022.

The JPML has already transferred 22 similar opioid actions from this District, all involving complaints brought by counties and cities. Those transfers do not amount to a determination by the JPML that federal jurisdiction exists in those cases, and "opposition to transfer challenging the propriety of federal jurisdiction is insufficient to warrant vacating conditional transfer orders covering otherwise factually-related cases." Transfer Order at 2, MDL No. 2804 (J.P.M.L. Dec. 6, 2018), ECF No. 3169 (transferring three Maine cases over jurisdictional objections). For three of the 22 cases, Magistrate Judge Nivison recommended that they be stayed pending the JPML's decisions, *City of Portland v. Purdue Pharma, LP*, Nos. 2:18-cv-00282, 1:18-cv-00298, 2:18-cv-00310, 2018 WL 6191127, at *5 (D. Me. Nov. 28, 2018),

and his Recommended Decision was not acted upon before the JPML transferred the cases.[1] In the remaining 19 actions, there were no motions to remand, and jurisdiction was not addressed before the transfer occurred.[2] Accordingly, this case presents a nearly-blank slate in this District as to how the Supreme Court's teachings on federal jurisdiction, particularly the law of embedded federal questions, apply in cases arising out of practices associated with the distribution of opioids. For the reasons that follow, I grant the Plaintiffs' Emergency Motion to Remand and deny as moot the Defendants' Motion to Stay.

## I. METHODOLOGY

I begin with the analytical framework for prioritizing between the remand and stay motions.

A district court may decide a motion to remand notwithstanding a pending conditional transfer order from the JPML. "The pendency of a . . . conditional transfer order . . . before the [JPML] . . . does not affect or suspend orders and pretrial

---

[1] *See* Transfer Order, *City of Portland v. Purdue Pharma LP*, No. 2:18-cv-00282 (D. Me. Dec. 6, 2018), ECF No. 97; Transfer Order, *City of Bangor v. Purdue Pharma LP*, No. 18-cv-00298 (D. Me. Dec. 6, 2018), ECF No. 111; Transfer Order, *City of Lewiston v. Purdue Pharma LP*, No. 2:18-cv-00310 (D. Me. Dec. 6, 2018), ECF No. 89.

[2] *See Androscoggin Cnty. v. Purdue Pharma LP*, No. 2:19-cv-00012 (D. Me.); *City of Auburn v. Purdue Pharma LP*, No. 2:19-cv-00013 (D. Me.); *City of Waterville v. Purdue Pharma LP*, No. 1:19-cv-00014 (D. Me.); *City of Augusta v. Purdue Pharma LP*, No. 1:19-cv-00017 (D. Me); *Aroostook Cnty. v. Purdue Pharma LP*, No. 1:19-cv-00018 (D. Me.); *Penobscot Cnty. v. Purdue Pharma LP*, No. 1:19-cv-00019 (D. Me.); *Sagadahoc Cnty. v. Purdue Pharma LP*, No. 2:19-cv-00020 (D. Me.); *Lincoln Cnty. v. Purdue Pharma LP*, No. 2:19-cv-00021 (D. Me.); *York Cnty. v. Purdue Pharma LP*, No. 2:19-cv-00022 (D. Me.); *Wash. Cnty. v. Purdue Pharma LP*, No. 1:19-cv-00024 (D. Me.); *Somerset Cnty. v. Purdue Pharma LP*, No. 1:19-cv-00025 (D. Me.); *City of Biddeford v. Purdue Pharma LP*, No. 2:19-cv-00092 (D. Me.); *Cumberland Cnty. v. Purdue Pharma LP*, No. 2:19-cv-00093 (D. Me.); *Kennebec Cnty. v. Purdue Pharma LP*, No. 1:19-cv-00096 (D. Me.); *City of Saco v. Purdue Pharma, LP*, No. 2:19-cv-00143 (D. Me.); *Waldo Cnty. v. Purdue Pharma LP*, No. 1:19-cv-00144 (D. Me.); *City of Sanford v. Purdue Pharma LP*, No. 2:19-cv-00146 (D. Me.); *Cnty. of Knox v. Purdue Pharma LP*, No. 2:19-cv-00371 (D. Me.); *City of Rockland v. Purdue Pharma LP*, No. 2:19-cv-00373 (D. Me.).

proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court." J.P.M.L. R. 2.1(d). While "remand motions can be presented to and decided by the transferee judge," district courts "wishing to address such motions have adequate time in which to do so" themselves. *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 170 F. Supp. 2d 1346, 1347 (J.P.M.L. 2001).

Nonetheless, when a potential transfer by the JPML looms, dueling remand and stay motions force district courts to balance substantial but rival interests. On the one hand, "important values of federalism and separation of powers are implicated in the limited jurisdiction of federal courts." *Est. of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1164 (10th Cir. 2004). Indeed, that is why subject-matter jurisdiction "can be raised sua sponte at any time," *McBee v. Delica Co.*, 417 F.3d 107, 127 (1st Cir. 2005), and "challenges to federal subject matter jurisdiction may be raised for the first time on appeal," *Am. Fiber & Finishing, Inc. v. Tyco Healthcare Grp., LP*, 362 F.3d 136, 138-39 (1st Cir. 2004). On the other hand, when the court managing multidistrict litigation is slated to answer a particular jurisdictional question in the context of already-transferred cases, a district court that decides that same issue duplicates efforts and risks inconsistent outcomes. In light of this tension, courts do well to consider whether "a stay would further the policies of judicial economy, efficiency, and consistency that are deeply embodied in the [multidistrict litigation] statute." 15 *Charles Allen Wright, Arthur R. Miller & Richard D. Freer*, Federal Practice and Procedure § 3866.1 (4th ed. 2021); *see also* Manual for Complex Litigation (Fourth) § 20.131 (2004) ("[M]otions to . . . remand,

raising issues unique to the particular case, may be particularly appropriate for resolution before the [JPML] acts on the motion to transfer.").

Many courts have balanced the imperative of ensuring federal jurisdiction and the benefits of multidistrict litigation through the three-step methodology set forth in *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044, 1049 (E.D. Wis. 2001), a procedure that "is . . . consistent with the policy underlying" the multidistrict litigation statute. *Wright, Miller & Freer, supra*, § 3866.1; *see, e.g., City of Portland*, 2018 WL 6191127, at *5 ("The court's approach in [*Meyers*] is instructive."); *DCH Health Care Auth. v. Purdue Pharma L.P.*, CIVIL ACTION 19-0756-WS-C, 2019 WL 6493932, at *2 (S.D. Ala. Dec. 3, 2019) ("Dozens of sister courts have adopted or applied *Meyers* as well, and it has been described as the majority approach." (footnote omitted)). First, if a "preliminary assessment suggests that removal was improper, the court should promptly . . . remand the case to state court." *Meyers*, 143 F. Supp. 2d at 1049. But if the preliminary assessment instead reveals that the jurisdictional issue is "factually or legally difficult, the court's second step should be to determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the" multidistrict litigation. *Id.* If so, "the court proceed[s] to the third step and consider[s] the motion to stay," although this third step "does not mandate that a stay should be granted." *Id.*

This three-step approach appropriately accommodates the fundamentality of subject-matter jurisdiction within the federal system and the virtues of judicial economy, efficiency, and consistency promoted by multidistrict litigation. At step one, remand is appropriate only when the district court finds the jurisdictional issue to be

straightforward, which limits the duplication of efforts to relatively simple issues and reduces the risk that the court managing the multidistrict litigation will disagree later. Where jurisdictional issues are complex, courts will consider the equities of a stay before deciding a motion to remand if similar issues will arise in the multidistrict litigation.

The Plaintiffs endorse the *Meyers* approach, while the Defendants would prefer that I prioritize their Motion to Stay. The Defendants also argue that a stay is supported under *Meyers*. Because addressing the request for a stay without conducting a preliminary assessment of the remand motion could bypass my fundamental duty to ensure subject-matter jurisdiction, *see* 28 U.S.C.A. § 1447(c) (West 2022) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."), and because a judge has "broad discretion" over whether to stay proceedings, *Clinton v. Jones*, 520 U.S. 681, 706 (1997), I elect to address the parties' competing motions under the *Meyers* framework.

Before doing so, I pause to note that I am not the first to apply *Meyers* when evaluating state-law claims against opioid distributors. The parties have cited to many cases from other jurisdictions that closely resemble this one, including many unreported decisions that they have provided as exhibits. Three things are apparent from this body of decisions that has been put forward by the parties. First, many courts, perhaps a majority, have concluded that the jurisdictional questions presented by cases similar to this one are difficult. *See, e.g., Paintsville Hosp. Co. v. Amneal Pharms., LLC*, Civil. No. 7:20-cv-00102, 2020 WL 7048275, at *3 (E.D. Ky.

6

Dec. 1, 2020); *Dallas Cnty. Hosp. Dist. - Parkland Mem'l Hosp. v. Amneal Pharms., Inc.*, Civil Action No. 4:19-CV-04834, 2020 WL 429833, at *3 (S.D. Tex. Jan. 28, 2020); *Cnty. of Jim Wells v. Purdue Pharma, L.P.*, CIVIL ACTION NO. H-19-3580, 2019 U.S. Dist. LEXIS 173161, at *5 (S.D. Tex. Oct. 4, 2019). Those courts eventually proceeded to *Meyers* step three, at which point they granted the defendants' motions to stay. *See, e.g.*, *Paintsville Hosp.*, 2020 WL 7048275, at *3-5; *Dallas Cnty. Hosp. Dist.*, 2020 WL 429833, at *3; *Cnty. of Jim Wells*, 2019 U.S. Dist. LEXIS 173161, at *5-6. Second, courts have frequently offered conclusory explanations for the difficulty of the jurisdictional issues, without providing considered analysis as to why jurisdiction may exist. *See, e.g.*, *Paintsville Hosp.*, 2020 WL 7048275, at *3 ("[T]he Defendants reasonably argue that [jurisdiction exists] in this case by alleging that Plaintiffs' underlying theory of liability is based on legal duties arising under the federal Controlled Substances Act." (citation omitted)); *Dallas Cnty. Hosp. Dist.*, 2020 WL 429833, at *3 ("Given the difficulty of the jurisdictional issue in this case, the Court proceeds to *Meyers* step two."); *Cnty. of Jim Wells*, 2019 U.S. Dist. LEXIS 173161, at *5 ("The pending motion to remand presents factually and legally difficult issues."). Third, those courts that have delved into the substance of these jurisdictional issues during preliminary assessments have unanimously concluded that remand is necessary. *See, e.g.*, *Miss. Baptist Med. Ctr., Inc. v. Amneal Pharms., LLC*, 3:20-CV-433, slip op. at 3-13 (S.D. Miss. Sept. 28, 2020) (available at ECF No. 59-3); *Fayetteville Ark. Hosp. Co. v. Amneal Pharms., LLC*, CASE NO. 5:20-CV-5036, 2020 WL 2521515, at *3 (W.D. Ark. May 18, 2020); *City of Worcester v. Purdue*

7

*Pharma L.P.*, CIVIL ACTION NO. 18-11958, 2018 U.S. Dist. LEXIS 215824, at *7-10 (D. Mass. Nov. 21, 2018).

My preliminary assessment under *Meyers* step one as to whether the jurisdictional issues presented by this case are difficult has been informed by this body of decisions. For the reasons I will explain, I conclude that under the circumstances presented here a remand of this case to the Maine Superior Court is appropriate.

## II. PRELIMINARY ASSESSMENT OF JURISDICTION

A case may be removed to federal court only if it could have been filed there originally. 28 U.S.C.A. § 1441(a) (West 2022). The Defendants contend that federal question jurisdiction exists pursuant to 28 U.S.C. § 1331. There are two ways for a case to "aris[e] under the . . . laws . . . of the United States." 28 U.S.C.A. § 1331. "Most directly, a case arises under federal law when federal law creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 257 (2013). This "accounts for the vast bulk of suits that arise under federal law." *Id.* There is also a "a 'special and small category' of cases in which arising under jurisdiction still lies" even if "a claim finds its origins in state rather than federal law." *Id.* at 258 (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)). "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* These are four independently necessary requirements and not the criteria of a multifactor balancing test. *Id.*

The Complaint alleges state-law causes of action: negligence, public nuisance, unjust enrichment, fraud and negligent misrepresentation, fraudulent concealment, and civil conspiracy. Accordingly, if federal question jurisdiction exists here, it would be because this case fits within that special and small category of cases that necessarily raises actually disputed and substantial questions of federal law fit for a federal forum. The Defendants contend that one or more of these claims (they do not specify which) satisfies the *Gunn* requirements because the Plaintiffs allege that the Defendants violated drug distributors' duties to monitor, report, and prevent suspicious orders of prescription opioids. The Defendants insist that those duties exist only under federal law; specifically, the Controlled Substances Act, 21 U.S.C. §§ 801-904, and its implementing regulations. The Controlled Substances Act requires distributors to "design and operate a system to identify suspicious orders . . . [and] upon discovering a suspicious order . . . notify the . . . Drug Enforcement Administration." 21 U.S.C.A. § 832(a) (West 2022); *see also id.* § 823(b)(1), (e)(1) (West 2022) (requiring consideration of the maintenance of effective controls against diversion into illegitimate channels when evaluating applications to distribute controlled substances).

"[T]he removing party bears the burden of persuasion vis-à-vis the existence of federal jurisdiction . . . ." *López-Muñoz v. Triple-S Salud, Inc.*, 754 F.3d 1, 9 (1st Cir. 2014) (quoting *BIW Deceived v. Loc. S6, Indus. Union of Marine & Shipbuilding Workers of Am.*, 132 F.3d 824, 831 (1st Cir. 1997)). In conducting my preliminary assessment of jurisdiction, I evaluate whether the Defendants have sufficiently demonstrated the presence of all four of the *Gunn* requirements. For the reasons I

will explain, at least the first requirement—a necessarily raised issue of federal law—is absent.

A federal question is necessarily raised if "it is not logically possible for the plaintiffs to prevail on [a] cause of action without . . . answering the embedded question of . . . federal law." *R.I. Fishermen's All., Inc. v. R.I. Dep't of Env't Mgmt.*, 585 F.3d 42, 49 (1st Cir. 2009). Again, the Defendants argue that one or more of the Plaintiffs' claims necessarily raises the scope of the Defendants' federal duties to monitor, report, and prevent suspicious orders of opioids. The Plaintiffs counter that the same duties exist under Maine common law, Maine statutes, and Maine regulations. The Defendants rejoin that the Plaintiffs' statutory and regulatory citations are inapposite.

I need not interpret the disputed statutes and regulations because the Plaintiffs' reliance on the general duty to exercise reasonable care under Maine common law refutes the Defendants' argument that the duties imposed by the Controlled Substances Act are essential to the Plaintiffs' claims. The Complaint states that, "[a]part from Maine statutes and regulations, all Defendants have a duty to exercise reasonable care when . . . distributing . . . opioids." ECF No. 1-1 ¶ 500. That duty allegedly includes "identifying and halting suspicious orders . . . before shipping them." *Id.* The Plaintiffs also assert that the "Defendants knew or should have known [that opioids] were being diverted," *id.*, and that the "Defendants' failure to identify, monitor, detect, investigate, report, and refuse to sell, fill, or dispense suspicious orders and prescriptions of opioids . . . violated Defendants' duty to act reasonably in light of the serious and foreseeable harms associated with opioid

10

diversion and abuse," *id.* ¶ 542. As such, the Defendants' theory fails on its own terms: The Plaintiffs do not necessarily rely on the Controlled Substances Act for the Defendants' purported obligation to monitor, report, and prevent suspicious orders.

The preceding conclusion was not difficult to reach in part because "many other courts have found in similar cases concerning the manufacture and distribution of opioids" that "alleged state-law duties mean that the construction of the Controlled Substances Act is not a necessary part of the plaintiff's claims." *Ill. Pub. Risk Fund v. Purdue Pharma L.P.*, Case No. 19 C 3210, 2019 WL 3080929, at *2 (N.D. Ill. July 15, 2019) (collecting cases). Indeed, another district court in this circuit concluded that a plaintiff had not necessarily raised the scope of the defendants' duties under the Controlled Substances Act when the plaintiff had similarly alleged that the defendants "concurrently had a common law duty to exercise reasonable care when distributing the drugs." *City of Worcester,* 2018 U.S. Dist. LEXIS 215824, at *9; *accord Miss. Baptist Med. Ctr.*, slip op. at 7 ("[E]ven if Plaintiffs had not asserted a state statutory basis, they claimed that Defendants also breach the common-law duty of reasonable care."); *City of Reno v. Purdue Pharma, L.P.*, Case No. 3:18-cv-00454, 2018 WL 5730158, at *2 ("Reno could succeed on this claim by showing that Defendants breached a general duty of reasonable care as opposed to the specific duties imposed by either the [Controlled Substances Act] or [a Nevada regulation], though those duties might help to establish a standard of reasonable care that favors Reno.").

My conclusion that the Plaintiffs do not necessarily raise a federal issue does not conflict with the Fifth Circuit's reasoning in *Board of Commissioners of Southeast*

11

*Louisiana Flood Protection Authority–East v. Tennessee Gas Pipeline Co.*, 850 F.3d 714, 722-23 (5th Cir. 2017). That decision held that negligence and public nuisance claims necessarily raised federal issues when federal law was "the exclusive basis for holding Defendants liable for some of their actions." *Id.* at 722. For one of the alleged duties of care, the Fifth Circuit reasoned that the source could not have been Louisiana law because the Louisiana Supreme Court had previously held that a similar state law did not impose that duty. *Id.* at 723.

This case is analogous to one that a district court in the Fifth Circuit remanded notwithstanding *Southeast Louisiana Flood Protection Authority*. *See Miss. Baptist Med. Ctr.*, slip op. at 10-12. There, the plaintiffs had alleged "common-law duties [that] overlap duties found in the" Controlled Substances Act, and the defendants had "identified no authority suggesting that Mississippi would preclude a common-law negligence claim against the Distributor Defendants for breaching the duty of reasonable care." *Id.* at 11. The same is true here: The Plaintiffs allege the breach of common law duties that are akin to duties established by the Controlled Substances Act, and the Defendants have not identified any contrary Maine decisions. Thus, there is no federal question necessarily raised by the Complaint, and federal question jurisdiction does not exist.[3]

---

[3] Because federal question jurisdiction does not exist over causes of action grounded in state law without a necessarily raised federal question, the jurisdictional analysis for this case ends here, and I do not address the remaining *Gunn* requirements.

12

## III. CONCLUSION

My assessment of federal jurisdiction starts and ends at *Meyers* step one. As a result, I do not reach the Defendants' motion to stay.

The Plaintiffs' Emergency Motion to Remand (ECF No. 13) is **GRANTED**; this action is remanded to the Superior Court of Cumberland County, Maine; and the Defendants' Motion to Stay (ECF No. 22) is **DENIED AS MOOT**.

**SO ORDERED.**

Dated: **January 19, 2022**

                                            /s/ JON D. LEVY
                                     **CHIEF U.S. DISTRICT JUDGE**